**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY R. LUCERO,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 1:11-0142** |
| **v.** | : | **(CONNER, D.J.)** |
| | | **(MANNION, M.J.)** |
| **RICARDO MARTINEZ,** | : | |
| **Warden,** | | |
| | : | |
| **Respondent** | | |

## REPORT AND RECOMMENDATION[1]

On January 20, 2011, the petitioner, an inmate incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg")[2] filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (Doc. No. 1). Lucero bases his petition on allegations of Sixth Amendment violations, specifically, that he was denied counsel of choice and that he had ineffective assistance of appellate counsel.

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

[2] Although in his petition Lucero listed his location as FCC-Allenwood, his most recent filings have been mailed from USP-Lewisburg. A search of the Bureau of Prisons inmate locator indicates that Lucero is incarcerated at USP-Lewisburg.

Lucero filed his petition along with a supporting memorandum on law on January 20, 2011.  (Doc. Nos. 1 and 2). A response to the petition, along with supporting exhibits, were filed by respondent on August 5, 2011. (Doc. No. 16). The petitioner filed a traverse on August 22, 2011. (Doc. No. 20). Thus, the matter is ripe for disposition. It is recommended that the petition for writ of habeas corpus be **DISMISSED**.

## I.    <u>BACKGROUND</u>

Lucero is a formerly enlisted soldier in the United States Army, who is serving a sentence of life without parole for premeditated murder and desertion terminated by apprehension.

Lucero is challenging his military conviction on two grounds. First, Lucero alleges that he was denied the right to counsel of his choosing. Second, Lucero alleges ineffective assistance of counsel (regarding his appellate, not trial, counsel).

According to the Memorandum Opinion of the United States Army Court of Criminal Appeals, the facts are as follows[3]:

> Charges were preferred on 2 January 2002. Throughout the proceedings appellant was represented by two detailed trial defense counsel, Major (MAJ) Robitaille, senior defense counsel at Fort Bliss, Texas, and Captain (CPT) Russell, senior defense counsel at Fort Huachuca, Arizona. On 28 February 2002,

---

[3]When adjudicating a military habeas petition, federal courts are to presume the factual issues made by the military courts are correct. (A habeas petitioner would have the burden of rebutting the presumption by clear and convincing evidence.)  *See Brosius v. Warden* 278 F.3d 239 (3d Cir. 2002).

appellant unconditionally waived his right to an Article 32, UCMJ, pretrial investigation.

The charges were referred to a general court-martial on 22 March 2002. Appellant was served with charges on 25 March 2002. Although the government requested a trial date of 9 April 2002, the military judge granted a defense delay until 10 May 2002, to conduct further investigation and to explore the necessity of a mental examination of appellant. Appellant was arraigned on 10 May 2002, and advised of his rights to counsel, including the right to hire civilian counsel. At that time, he indicated he wished to be represented by MAJ Robitaille and CPT Russell. Appellant expressed no desire to hire civilian counsel.

At the arraignment on 10 May 2002, the military judge determined the defense would not be ready by the scheduled 28 May 2002 trial date. The military judge, upon defense request and with government concurrence, therefore set motions for 29 and 30 May 2002, and trial for 5-9 August 2002. At the 29 May 2002 Article 39(a), UCMJ, motions hearing the military judge granted the defense request for expert assistance and kept the case on the docket for 5-9 August 2002, "to ensure the defense had plenty of opportunity to prepare for trial."

Major Robitaille informed the military judge the "trial had to conclude by 9 August because that was the last day he could sign into the Graduate Course," and the "earliest he would be able to return to Fort Hood would be over Christmas break 2002," At the 29 May 2002 hearing, there was no mention of appellant's intent to hire civilian counsel. The first indication appellant was considering retaining civilian counsel occurred over six weeks later.

By an email dated 17 July 2002, the military judge asked appellant's defense counsel "[A]ny truth to the rumor the accused is hiring a civilian defense counsel?" By an email, dated 22 July 2002, CPT Russell informed the military judge, "I spoke with

Private (PVT) Lucero today, as well as Mr. Galligan,[4] and understand that PVT Lucero will be retaining Mr. Galligan today. Accordingly, I expect notice of appearance in the case as well as a request for a continuance from Mr. Galligan."

The military judge responded to this email the same day stating:

> I would expect to hear from the government what, if any, specific prejudice there could be to the government's case if further delay were to be granted. Any request for further delay would have to be based on extraordinary reasons given the amount of defense delay already granted. And, any further delay would likely result in MAJ Robitaille being unable to continue representing the accused because of his grad course obligation.

On 25 July 2002, Mr. Galligan filed a motion requesting an indefinite continuance with the court.[5] In support of the motion, Mr. Galligan stated: (1) he had "been retained by the accused only several days ago;" (2) he needed to familiarize himself with the appellant's case; (3) to date, the government had failed to provide copies of the case file and discovery; and (4) the two military defense counsel were geographically separated which made communication with them difficult. Mr. Galligan also stated he may be forced to withdraw if a delay was not granted. Notably, this motion contained no rationale for Mr. Galligan's eleventh hour hiring.

The government filed a brief opposing the continuance on 26 July 2002. The government outlined potential issues with seven witnesses if the trial was further continued. The government listed a total of fifteen witnesses (Fourteen were traveling from

---

[4]Mr. John P. Galligan, Esquire, is a retired Army Judge Advocate colonel and former military judge at Fort Hood.

[5]According to trial counsel's brief, at some point prior to trial Mr. Galligan reduced the requested delay to ninety days.

4

New Mexico, one from Korea).[6] The government alleged any further delay would "result in financial hardship, possible employment repercussions, and unavailable or reluctant witnesses." Two of the government's witnesses were students.

The military judge denied the defense motion for a continuance on 26 July 2002. The military judge took her duty concerning the requested continuance seriously. In a cover email to her decision (dated 26 July at 9:51 p.m.) She wrote, "I apologize for the amount of time it took for me to prepare this ruling. I thought about it long and hard. But, I determined that I could not approve any further delay in this case without seriously jeopardizing the effective administration of justice." Additionally, the next to last paragraph of her written decision states:[7]

> The undersigned has not denied defense requests for delay since arriving at Fort Hood in July 2001, much to the government's dismay, because the government has not provided the showing of actual prejudice in the past as trial counsel has done in this case. I do not deny this request lightly, but only because it is necessary in the interests of justice that it be denied.

On 5 August 2002, the day of trial, the military judge revisited this issue. Appellant asked to be represented by Mr. Galligan. The military judge discussed the denial of the requested continuance and appellant acknowledged this would effectively prevent Mr. Galligan from representing him. For the first time, appellant's detailed defense counsel offered an explanation for Mr. Galligan's recent retention. According the MAJ Robitaille, appellant had not received pay and allowance while in pretrial

---

[6]Eleven witnesses actually testified for the government on the merits. An additional five witnesses testified for the government during the presentencing phase of the trial.

[7]The military judge made several statements concerning the continuance request on the record and attached as an appellate exhibit her essential findings of fact in support of the denial.

confinement until "shortly prior to the 25 July date and...those payments were what allowed him...to hire a civilian attorney.[6] In addition, [PVT] Lucero had differences regarding strategy and concerns about detailed counsel['s] ability to get information from the government in a timely manner which lead [sic] to him to contact Mr. Galligan..."

The military judge then informed appellant:

> Okay then, [PVT] Lucero, that still doesn't change the court's ruling on the denial for your request for a continuance. If you were entertaining even hiring civilian counsel you're required to bring that to the court's attention prior to 25 July when the trial date has been set in May for 5 August.

After the judge's ruling appellant continued to be represented by his two detailed military defense counsel.[7]

(Doc. No. 16-2 at 31-35).

## II. **DISCUSSION**

1.  Article III Court's Review of Military Court Decision

Before we turn to the merits of Lucero's arguments, the first issue we must address is the respondent's argument that this court should deny the petition because the military courts have fully and fairly considered the

---

[6]Though no evidence was introduced at trial to support this assertion we will assume appellant encountered pay problems while in pretrial confinement. This issue is not surprising based on appellant's lengthy period of absence without leave. Appellate defense counsel further assert appellant was paid in May, but because of his pretrial confinement status, could not access these funds until July.

[7]MAJ Robitaille represented appellant post-trial.

argument that Lucero presented to those courts: that the military trial judge improperly denied his request for a pre-trial continuance.

The Supreme Court stated, in *Burns v. Wilson*, a plurality decision, which is, almost 60 years later, still the Court's leading authority on the degree to which federal courts may examine a habeas review of a military trial, that "the scope of matters open for review[] has always been more narrow than in civil cases." 346 U.S. 137, 139; 73 S. Ct. 1045; 97 L. Ed. 1508 (1953). "Indeed, Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights." *Id.* at 140. "The military courts [] have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights." *Id.* at 142. "In military habeas corpus cases [] it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings – of the fair determinations of the military tribunals after all military remedies have been exhausted." *Id.* "Congress has provided that these determinations are "final" and "binding" upon all courts." *Id.* "[T]his does not displace the civil courts' jurisdiction over an application from habeas corpus from the military prisoner." *Id.* "But these provisions do mean that when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Id.* "[I]t is not the duty of the civil courts [] to reexamine and reweigh each item of

7

evidence of the occurrence of events which tend to prove or disprove one of the allegation in the applications for habeas corpus." *Id.* at 144. "It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims." *Id.*

In explaining the plurality's decision in *Burns,* the Third Circuit explained "[a]lthough the rule that emerges from Burns is far from clear in all respects, it appears that a majority (the plurality plus Justice Minton) held that in considering a constitutional claim involving a pure question of law or a mixed question of law and fact, a habeas court may not exercise de novo review and may not go beyond considering whether the military courts "dealt fully and fairly" with the claim." *Brosius v. Warden*, 278 F.3d 239, 243 (3d Cir. 2002), cert. denied, 537 U.S. 947, 123 S. Ct. 409, 154, L. Ed. 2d 290. "[A]bsent a challenge to the constitutionality of the statute under which the defendant was convicted [] our inquiry in a military habeas case may not go further than our inquiry in a state habeas case." *Id.* at 245. Additionally, "[w]hile the Supreme Court has not revisited the *Burns* scope of review in recent years, this Court has recognized that the full and fair consideration test is intact even following AEDPA's alterations to habeas law." *Armann v. McKean,* 549 F.3d 279, 288 (3d Cir. 2008) (internal citations omitted). "[A] federal court must review what occurred procedurally in the military courts to determine if a petitioner was afforded full and fair consideration to each of his or her claims." *Id.* at 291.

Additionally, "federal courts normally will not entertain habeas petitions

8

by military prisoners unless all available military remedies have been exhausted." *Schlesinger v. Councilman*, 420 U.S. 738, 758; 95 S. Ct. 1300; 43 L. Ed. 2d 591 (1975). Thus, respondent argues that Lucero has not fully exhausted his military remedies because he did not petition the Army Court of Criminal Appeals ("ACCA") for a writ of error *coram nobis* to consider his ineffective appellate counsel claims.[8]

As described by the Tenth Circuit:

> The ACCA has the authority to issue extraordinary writs under the All Writs Act. 28 U.S.C. § 1651(a); *Dettinger v. United States,* 7 M.J. 216 (C.M.A. 1979). Because of their extraordinary nature, writs are issued sparingly, and a petitioner bears an extremely heavy burden to establish a clear and indisputable entitlement to extraordinary relief. *Dew v. U.S.,* 48 M.J. 639, 648 (A. Ct. Crim. App. Apr. 23 1998) (*citing Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383-84, 74 S. Ct. 145, 98 L. Ed. 106 (1953)).

*Thomas v. United States Disciplinary Barracks*, 625 F. 3d 667, 670, n3 (10th Cir. 2010) (describing what *coram nobis* is, in a case in which the petitioner had voluntarily abated his appeal in order to petition the ACCA for a writ of error *coram nobis*).

A writ of error *coram nobis* is one of "extraordinary" authority. *Dew, supra*, at 645. The ACCA "may" use its discretion to "exercise extraordinary writ authority in aid of [its] actual or potential jurisdiction." *Id.* Additionally, the

---

[8]Additionally, although Lucero filed a *U.S. v. Grostefon* motion on appeal (a *Grostefon* motion allows a petitioner to personally raise issues before the courts of military review even if his or her appellate counsel thinks the issue lacks merit 12 M.J. 431 (C.M.A. 1982)), he failed to raise the argument that he makes here based on the *Gonzalez-Lopez case, supra*.

ACCA's authority to issue extraordinary writs is also allowed as part of its supervisory jurisdiction. *Id.* at 645.

Respondent bases his argument that the instant petition has not been exhausted solely on the footnote in *Thomas, supra*, in which the Tenth Circuit merely describes what a writ of error *coram nobis* is in a case in which petitioner voluntarily abated his appeal in order to petition the ACCA for the writ. We decline to accept respondent's suggestion that we stretch the Tenth Circuit's footnote so far as to hold that a military habeas petition is not fully exhausted until the petitioner applies for relief via this extraordinary remedy. The petitioner here has fully exhausted his direct appeal rights. We do not find that he is also required to petition for an unusual and extraordinary remedy before filing a § 2241 petition with the Article III courts.

Although the rule on a federal district court's review of a military habeas petition is far from clear, what is clear from the case law is that a military habeas petition is not intended to displace or overrule decisions previously made by the military courts. Thus, if the petitioner is re-raising issues he raised in front of the military courts, then the federal court must review the record from the military courts. This court only has jurisdiction to determine if there was full and fair consideration afforded to each of Lucero's claims. Then, after this determination has been made, if there are any collateral issues that could not have been decided by the military courts, our jurisdiction is limited in the same way it would be in a state habeas proceeding. It appears

10

that the situation at hand, a collateral attack of ineffective assistance of appellate counsel, is precisely the intent of providing inmates convicted in military courts with the option to file a writ of habeas corpus.

Therefore, because Lucero is alleging his appellate counsel was ineffective, we have jurisdiction to review his habeas petition. However, insofar as Lucero argues that his appellate counsel was ineffective for not arguing the *U.S. v. Gonzalez-Lopez*[9] case (discussed below) and that case's implications on the *Sixth Amendment* right to counsel of choice, any review made by this court that hinges on the trial court's decision not to grant a continuance, and the ACCA's and Court of Appeals for the Armed Forces' ("CAAF") affirmance that decision, will be based on *Burns'* full and fair consideration analysis.

2.  Lucero's 1st ground for petitioning:  Counsel of Choice

Because Lucero argues that his appellate counsel was ineffective for not arguing the *U.S. v. Gonzalez-Lopez* case, *supra*, on appeal, for the sake of clarity in this report and recommendation, we will first determine if Lucero's constitutional right to counsel of choice was violated, before we turn to the ineffective assistance of appellate counsel argument.[10]

---

[9]548 U.S. 140, 126 S. ct. 2557, 165 L. Ed. 2d 409 (2006).

[10]This is because, the right to counsel of choice and ineffective assistance of counsel claims are oftentimes confused, as it was by the government in *Gonzalez-Lopez*, *supra*, and the Supreme Court was very clear that there are different standards of review for each type of claim. Thus, even

Although Lucero repeatedly argues that even a first year law student would have argued that he was denied counsel of choice based on *U.S. v. Gonzalez-Lopez,* that argument is misplaced. 548 U.S. 140, 126 S. ct. 2557, 165 L. Ed. 2d 409 (2006). It is well-settled that the Sixth Amendment affords those who do not require appointed counsel the right to counsel of his choosing. *Id.* at 144; *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988); *Powell v. Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55, 77 L. Ed. 158 (1932), *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-625, 109 S. Ct. 2646, 105 L. Ed. 2d 528 (1989). Gonzalez-Lopez was charged in the Eastern District of Missouri for conspiracy to distribute marijuana. *Gonzalez-Lopez*, 548 U.S. at 142. His family hired an attorney to represent him, but after his arraignment, Gonzalez-Lopez contacted an attorney from California to represent him. *Id.* The California attorney was not admitted to practice in Missouri, and filed an application for admission *pro hac vice*. *Id.* The District Court denied his application without comment. *Id.* A month later, the California attorney filed a second application, which the District denied again without explanation. *Id.* The California attorney filed an application for a writ of mandamus to appeal the District Court's denial, but the Eighth Circuit dismissed the application. *Id.* Gonzalez-Lopez's

---

though Lucero is arguing that appellate counsel was ineffective for not better arguing that Lucero was denied counsel of choice, and the two arguments from Lucero are intertwined, we will nonetheless keep our analysis fo the two issues separate and distinct for the sake of clarity to the reader.

first attorney filed a motion to withdraw as counsel and a motion for a show cause hearing to consider sanctions against the California attorney for violating Missouri Rules of Professional Conduct for contacting Gonzalez-Lopez while represented. *Id.* at 143. The California attorney filed a motion to strike the motion for a show cause hearing. *Id.* The District Court denied the motion to strike and for the first time, explained that it had denied his motions for admission *pro hac vice* primarily because, in a separate case before it, the California attorney had violated the same Missouri rule for contacting a represented party. *Id.* The Eighth Circuit held that the District Court erred in its interpretation of the Missouri Rule of Professional Conduct, thus the District Court's denial of motion for admission *pro hac vice* was erroneous. *Id.* Because the District Court's denial of admission was erroneous, the Supreme Court concluded that the trial court violated Gonzalez-Lopez's Sixth Amendment right to counsel of choice. *Id.* at 148.

The Supreme Court explained the contours of the Sixth Amendment right to counsel of choice, and explained that when the right to be assisted by counsel of one's choice is wrongly denied there is a Sixth Amendment violation. *Gonzalez-Lopez* 548 U.S. at 148. However, what Lucero is missing in his analysis of his own situation is the words "wrongly denied." The Supreme Court was clear that

> [n]othing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them. As

13

the dissent to discusses, [] the right to counsel of choice does not extend to defendants who require counsel to be appointed for them. Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation. **We have recognized that a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar**. The court has, moreover, an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. None of these limitations on the right to choose one's counsel is relevant here. This is not a case about a court's power to enforce rules or adhere to practices that determine which attorneys may appear before it, **or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel.** However broad a court's discretion may be, the Government has conceded that the District Court here erred when it denied respondent his choice of counsel.

*Id.* at 151-153 (internal citations omitted) (emphasis added.

*Gonzalez-Lopez* did not overrule all other Supreme Court precedent, as Lucero would like to have us hold, it merely explained the contours of the right to counsel of choice. What *Gonzalez-Lopez* ensures is that the trial court cannot *wrongly* deny a criminal defendant his counsel of choice, but may *in effect*, deny a criminal defendant his counsel fo choice when making other, legitimate trial decisions, such as scheduling. In *Morris, Warden v. Slappy*, the defendant had been assigned a public defender, but six days prior to trial, the assigned public defender was unexpectedly hospitalized and a more senior public defender from the same office was assigned to the case. 461 U.S. 1, 5; 103 S. Ct. 1610; 75 L. Ed. 2d 610 (1983). The defendant himself requested a continuance, but the new public defender assured the court he

14

was prepared for trial, thus the trial court denied the continuance. *Id.* at 5-7.The defendant appealed his conviction, arguing, *inter alia*, that he was denied counsel of choice because he was not given the opportunity to continue trial until his original public defender was discharged from the hospital.[11] The Supreme Court stated that "[t]rial judges necessarily require a great deal of latitude in scheduling trials." *Id.* at 11. "Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Id.* "Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of counsel." *Id.*

Thus, the military judge should be afforded broad discretion in granting the continuance, and only if she unreasonably or arbitrarily denied the continuance, would Lucero be denied his Sixth Amendment right to counsel of choice. On appeal, Lucero's appellate counsel did raise the issue of whether or not the military trial judge abused her discretion by denying civilian

---

[11]Although current precedent appears to be clear that indigent defendants do not have the right to counsel of their choosing, and the Sixth Circuit applied the law, in part, as such, the Supreme Court still granted the *writ of certiori*, presumably to resolve other issues with the Sixth Circuit's holding - including the Sixth Circuit's holding that the right to counsel must include a meaningful attorney-client relationship.

15

defense counsel's motion for a continuance. (Doc. No. 16-2 at 30). Thus, our review of the military courts' analysis is based on Burns' "full and fair consideration" directive. The ACCA did a thorough review of the issue, and determined that the trial judge did not err. (Doc. No. 16-2 at 30-45). This was affirmed by the CAAF. (Doc. No. 16-1 at 13). After reading the opinion of the ACCA, we are satisfied that it gave full and fair consideration to the issue. Thus, we conclude that Lucero was not wrongly denied his Sixth Amendment right to counsel of choice.

### 3.  Lucero's 2nd ground for petitioning: Ineffective Assistance of Appellate Counsel

Lucero's second argument is that he was denied effective assistance of counsel because his appellate counsel did not present an argument to the ACCA based on *Gonzalez-Lopez*.

The seminal case used to determine whether trial counsel was ineffective is [Strickland v. Washington, 466 U.S. 668 (1984)](). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. [Id.]() Strickland establishes a two-part test. [Id.]() A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation "fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant". [Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000)]().   Judicial

scrutiny of counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or an adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Id. A court must make every effort to avoid the distorting effect of hindsight and evaluate the conduct from counsel's perspective at that time. Id. There is a strong presumption that counsel's conduct was reasonable. Id.

Lucero's appellate counsel was not ineffective for failing to argue based on *Gonzalez-Lopez* that Lucero was denied his right to counsel of choice. As discussed above, an argument based on *Gonzalez-Lopez* is misplaced.  As a result, appellate counsel's representation neither fell below an objective standard of reasonableness, nor prejudiced the defendant.

## III.   **RECOMMENDATION**

**(1)**    On the basis of the foregoing, it is recommended that the Petition for Habeas Corpus (Doc. No. 1) be **DISMISSED.**

s/  *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date: April 9, 2012**

O:\shared\REPORTS\2011 Reports\11-0142-01.wpd